UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRETEX COMPANIES, INC., | ) |
| | ) |
| Plaintiff, | ) No. 1:20-CV-00321 |
| | ) |
| v. | ) |
| | ) Judge Edmond E. Chang |
| PRECAST ENGINEERING COMPANY, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

The design of a parking structure in the Old Town area of Chicago allegedly did not go well. Cretex Companies now brings this indemnity action against Precast Engineering Company, alleging that if Cretex is on the hook for damages arising out of the structure's design, then Precast must cover that liability.[1] R. 1, Compl.[2] Precast moves to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6); R. 17, Mot. to Dismiss. For the reasons discussed in this Opinion, the motion to dismiss is denied.

**I. Background**

In evaluating the motion to dismiss, the Court accepts as true the allegations in the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In 2007, Cretex's wholly owned subsidiary, J.W. Peters, Inc., entered into a subcontractor agreement with Bentley Construction to design and construct the precast portion of a parking

---

[1]The Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a).
[2]Citations to the record are noted as "R." followed by the docket number.

structure in Chicago. R. 1, Compl. ¶¶ 1, 6. As a condition of getting the subcontractor role, Peters obtained a subcontractor performance bond issued by Continental Casualty Company in favor of Bentley in case any damages arose out of "work of or on behalf of" Peters on the parking structure. *Id.* ¶ 7. Under the bond, Continental served as the surety, Peters as the principal, and Bentley as the obligee. *Id.*

To perform the work for the parking structure, Peters in turn retained Precast as a subcontractor to work specifically on the structure's design. Compl. ¶ 6. In 2012, Peters dissolved as a corporate entity, but Cretex remained "responsible to Continental" for the obligations under the bond. *Id.* ¶ 10. So, for purposes of this case, Cretex now stands in the shoes of Peters.

All did not go well with the parking structure's construction. In 2018, Bentley (the general contractor) sued Continental in Illinois state court, alleging that Peters improperly designed the precast part of the parking structure, "resulting in certain discovered connection failures in the structure." Compl. ¶ 9. In reality, however, Bentley had no problems with *Peters*' actual construction work, and in fact, Bentley did not allege or prove any direct wrongdoing by either Cretex, Peters, or (of course) Continental. *Id.* ¶¶ 17, 20. Rather, Bentley specifically alleged that the faulty *design* led to the connection failures, and as mentioned above, *Precast* was the one responsible for the design. *Id.* ¶¶ 9, 17. After the parties engaged in discovery in state court, Continental, Cretex, and Bentley eventually settled (for an amount more than the diversity-jurisdiction minimum of $75,000). *Id.* ¶ 11. Presumably, Continental paid all or part of the settlement amount—after the settlement, Continental assigned to

2

Cretex any rights or claims it might have related to the lawsuit against Precast. *Id.*

In this lawsuit, Cretex claims that it was "liable to Bentley through no fault of [its] own" because the lawsuit and subsequent settlement involved "solely" Precast's work. Compl. ¶ 14. Cretex alleges that Precast is liable to Cretex for the settlement amount. *Id.* In response, Precast moves to dismiss, arguing that the Complaint fails to adequately state a claim.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

3

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

Cretex brings a single claim against Precast, alleging that Precast ought to indemnify Cretext for the settlement payment arising out of the allegedly defective design generated by Precast. Compl. ¶¶ 15-20. In the dismissal motion, Precast argues that it is unclear whether Cretex "is seeking some form of implied or equitable indemnity," or instead "seeks to be indemnified under the express terms of a contract." Mot. to Dismiss at 3. It is true, as Precast points out, that the Complaint fails to explicitly identify the applicable theory of liability. At the same time, however, the answer is (pardon the pun) implied: nowhere in the Complaint does Cretex allege that Precast agreed to indemnify Peters pursuant to the express terms of a contract. So, not surprisingly, Cretex confirms in its response brief that indemnity arises out of the *relationships* between the various parties, such that blame should be shifted to Precast for the alleged design defects in the parking structure. R. 21, Pl.'s Resp. Br. at 1; Compl. ¶ 20. That means that Cretex is advancing a claim for implied indemnity. *See BCS Insur. v. Guy Carpenter & Co.*, 490 F.3d 597, 603 (7th Cir. 2007) (quoting *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1252 (Ill. 1988)) (explaining that implied indemnity applies when "the indemnitee, although without fault in fact, has

4

been subjected to liability *solely because of the legal relationship with the plaintiff*") (emphasis added).

With the nature of the implied-indemnity claim confirmed, the substantive standard is well established. In Illinois, implied indemnity claims arise "where the parties have failed to include an indemnity provision in an agreement, and there is reason for a court to read such a provision into the agreement." *Mizuho Corp. Bank v. Cory & Assocs.*, 341 F.3d 644, 652 (7th Cir. 2003); *see also Am. Nat. Bank and Trust Co. v. Columbus-Cuneo-Cabrini Medical Ct.*, 609 N.E.2d 285, 287-88 (Ill. 1992). "The underlying principle is that the party that is in the better position to avoid liability is given an incentive to do so by being made responsible for the consequences." *Mizuho Corp. Bank*, 341 F.3d at 652 (cleaned up). As a liability theory, implied indemnity could apply here because Precast's allegedly faulty design work was the sole reason, according to Cretex, for the lawsuit and the resulting settlement.

The issue, then, is whether Cretex has alleged enough facts in the Complaint to adequately state a claim for implied indemnity. To state a claim for implied indemnity, a plaintiff must plausibly allege "(1) that there was a pre-tort relationship between the indemnitor and the indemnitee, and (2) that the indemnitee was held derivatively liable for the acts of the indemnitor." *BCS Insur.*, 490 F.3d at 603 (citing *Kerschner v. Weiss & Co.*, 667 N.E.2d 1351, 1356 (Ill. App. Ct. 1996)). The Court will address each element in turn.

5

**A. Pre-Tort Relationship**

Starting with the first element, Precast argues that Cretex has failed to adequately plead the "classic" pre-tort relationship that generally gives rise to a duty to indemnify under Illinois law. *See* Mot. to Dismiss at 5; R. 22, Def.'s Reply Br. at 3. In Illinois, "[c]lassic pretort relationships" are exemplified by lessor-lessee, employer-employee, owner-lessee, and master-servant relationships. *See, e.g.*, *Van Slambrouck v. Economy Baler Co.*, 475 N.E.2d 867, 870 (Ill. 1985). But this list is not exhaustive. *See, e.g., id.* at 871; *Commonwealth Edison Co. v. Hoge-Warren-Zimmerman Co.*, 534 N.E.2d 427, 430 (Ill. App. Ct. 1989); *Ill. Cent. Gulf R.R. v. Am. President Lines, Inc.*, 515 N.E.2d 242, 245 (Ill. App. Ct. 1987). Rather, "the examples indicate that a pretort relationship requires a specified pre-existing legal relationship beyond mere involvement in a common undertaking." *Ill. Cent. Gulf R.R.*, 515 N.E.2d at 245 (cleaned up). Here, the Complaint adequately alleges that sort of pre-tort relationship between Cretex and Precast.

For one, the facts in the Complaint allege a legal relationship between Peters and Precast that goes well beyond just "mere involvement in a common undertaking." As discussed earlier, Peters retained Precast as a subcontractor to design the precast part of the parking structure. Compl. ¶¶ 7, 12. Although it would have helped if Cretex had attached the contract between Peters and Precast to the Complaint, the very nature of the alleged project—Peters' act of hiring Precast to design a structure that Peters would then have to construct—necessarily implies an ongoing, time-consuming, and collaborative business relationship. *See, e.g., Ill. Cent. Gulf R.R.*, 515

6

N.E.2d at 245 (finding that a substantial, ongoing business relationship can give rise to a pre-tort relationship). On these allegations, the relationship between Peters and Precast plausibly satisfies the first element of implied indemnity. *See, e.g.*, *Horton v. Chicago*, 2016 WL 4945014, at \*8 (N.D. Ill. Sept. 15, 2016) (holding that pleadings adequately alleged pre-tort relationship where indemnitor and indemnitee had sub-contract agreement under which indemnitor agreed to provide security services); *Harrison v. Ill. Cent. R. Co.*, 2009 WL 3156701, at \*4 (S.D. Ill. Sept. 28, 2009) (holding that pre-tort relationship existed where indemnitor and indemnitee had an "ongoing, mutually beneficial, business relationship").

That said, there is still the question of whether the Complaint plausibly alleges a pre-tort relationship between *Cretex* (as the indemnitee), and Precast (as the indemnitor). Cretex alleges that after Peters dissolved as a corporate entity in 2012, Cretex remained responsible for Peters' obligations. Compl. ¶ 10.[4] Also, Cretex was the corporate parent of Peters, which was a wholly owned subsidiary of Cretex. *Id.* ¶ 16. Accepting these facts as true, it is reasonable to infer that Cretex now stands in Peters' legal shoes.

Precast insists that implied indemnity cannot apply "when the relationship is attenuated through a series of subcontracts[.]" Def.'s Reply at 3-4. To make that point, Precast relies on a recent federal district court case, *McNutt v. R&S Metals LLC*, 2020

---

[4] The Complaint does not explicitly allege that Cretex assumed all of Peters' rights and liabilities, but the Complaint does allege that Cretex remained responsible to Continental after Peters dissolved. Compl. ¶ 10. Precast does not dispute this, so the Court need not address this issue further for purposes of this Opinion.

WL 207049 (S.D. Ill. Jan. 14, 2020). Mot. to Dismiss at 3. But *McNutt* is distinguishable.

In *McNutt*, a group of construction companies hired a contractor, Southern Metal, to remove scrap metal from a worksite. 2020 WL 207049 at *1. In turn, Southern Metal hired its own subcontractor (a company called River Metals) for the job. *Id.* But River Metals in turn retained a *sub*-subcontractor, Langston Trucking, to do the heavy lifting, resulting in a chain of four contractors. *Id.* The plaintiff, an employee of the last subcontractor in the chain (Langston), died from an accident on the job. *Id.* at. In dismissing the original construction companies' implied-indemnity claim against River Metals and Langston Trucking, the district court concluded that the subcontractors' relationship with the construction companies "amounted to no more than involvement in a common undertaking, not an ongoing business relationship." *Id.* at *4. Specifically, the court reasoned that a pre-tort relationship "does not encompass the relationship between a contractor and a subcontractor with whom the contractor has no direct agreement or agency relationship … ." *Id.* (citing *Friedman, Alschuler & Sincere v. Arlington Structural Steel Co.*, 489 N.E.2d 308, 310 (Ill. App. Ct. 1985)).

Here, though, there is no similar chain of contractors separating indemnitor from indemnitee—it is not as if Cretex is bringing an implied-indemnity action against, say, a subcontractor that *Precast* had hired. Nor is Cretex trying to stand in the shoes of an entirely separate company (like Southern Metal in the *McNutt* case) in order to bring an indemnity claim against Precast. Rather, Cretex was the parent

8

of the company (Peters) that retained Precast as a subcontractor; and indeed, Cretex now remains liable for Peters' obligations. What's more, Cretex has also adequately alleged that Peters and Precast were engaged in an ongoing, mutually beneficial business relationship. So contrary to Precast's argument, the relationship between Precast and Cretex was not so attenuated that it extinguished any plausible duty by Precast to indemnify. Rather, because Cretex's relationship with Precast—by way of Cretex's subsidiary Peters—exposed Cretex to liability for Precast's alleged wrongdoing, that relationship also entitles Cretex to try to shift liability to Precast as the true wrongdoer. *Yonan v. Verson Allsteel Press Co.*, 522 N.E.2d 184, 185 (Ill. App. Ct. 1988) ("[T]he pretort relationship [is] crucial because it is that relationship which exposes one party to vicarious, constructive, derivative or technical liability for the wrongdoing of another. Because that relationship causes the exposure, it also entitles the innocent party to shift liability to the true wrongdoer.") (cleaned up). For these reasons, Cretex has sufficiently pleaded the "pretort relationship" element of the implied-indemnity claim.

### B. Derivative Liability

Turning to the second element, Cretex also has plausibly alleged that Precast is solely at fault. In Illinois, implied indemnity requires that "the indemnitee was held derivatively liable for the acts of the indemnitor." *BCS Insur.*, 490 F.3d at 603 (citing *Kerschner*, 667 N.E.2d at 1356); *see also Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 590 (Ill. 2008) ("The right to common law implied indemnity is available to a tortfeasor whose liability is vicariously imposed by policy of law rather than

culpability of conduct.") (cleaned up). In other words, the indemnitee (here, Cretex) must have been "guiltless with respect to the underlying tort[,]" *Mizuho Corp. Bank*, 341 F.3d at 652-53.

According to Precast, the Complaint fails to allege either that Cretex was blameless, or that Precast committed any wrongdoing. Not so. Cretex *repeatedly* alleges that: Precast was responsible for designing the precast part of the parking structure; it was solely Precast's faulty design that gave rise to Cretex's liability to Bentley; Peters' construction of the parking structure was never blamed; and neither Peters nor Cretex were ever at fault. Compl. ¶¶ 9, 12, 14, 17, 20. It is hard to imagine a clearer assertion of blamelessness, especially at the pleading stage. Thus, Cretex has adequately pled the second element of implied indemnity.

## IV. Conclusion

Because the Complaint states a plausible claim for implied indemnity against Precast, the motion to dismiss is denied. On or before December 14, 2021, the parties shall file a joint initial status report to propose a discovery schedule

.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 3, 2020